P7V3ZARC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        25 CR 179 (LTS)

5    NOMMA ZARUBINA,

6                   Defendant.

7    ------------------------------x    Conference

8                                       New York, N.Y.
                                        July 31, 2025
9                                       3:30 p.m.

10

     Before:
11
                    HON. LAURA TAYLOR SWAIN,
12
                                        District Judge
13

14                        APPEARANCES

15   JAY CLAYTON
          United States Attorney for the
16        Southern District of New York
     HENRY ROSS
17        Assistant United States Attorney

18   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
19   KRISTOFF I. WILLIAMS

20   ALSO PRESENT:  Pretrial Services Officer Meherun Mayer

21

22

23

24

25

P7V3ZARC

1          THE DEPUTY CLERK:  In the matter of U.S.A. v. Nomma

2    Zarubina.  Counsel, please state your name for the record.

3          THE COURT:  Just before you do that, the people who

4    are observing can be seated.  Thank you.  And Ms. Zarubina, you

5    can be seated as well.

6          MR. ROSS:  Good afternoon, your Honor.  Henry Ross for

7    the government.  And with me at counsel table is U.S. Probation

8    Officer Meherun Mayer.

9          THE COURT:  Good afternoon, Mr. Ross, and good

10   afternoon, Officer Mayer.

11         MS. MAYER:  Good afternoon.

12         MR. WILLIAMS:  Kristoff Williams for Ms. Zarubina who

13   is present.

14         THE COURT:  Good afternoon, Mr. William, and good

15   afternoon, Ms. Zarubina.  Is there a member of your family or

16   friend here in the courtroom?

17         THE DEFENDANT:  This is my daughter.  Yes.

18         THE COURT:  Good afternoon.  Thank you for coming to

19   court.

20         So as I understand it, we have a couple of matters

21   that we need to be addressed today.  A possible application to

22   for change of counsel, and also closing the circle on the

23   modification of pretrial supervision conditions that I had

24   raised in the order that I had issued to provide certain

25   supportive services to Ms. Zarubina.

P7V3ZARC

1        So, Mr. Williams, I'm going to ask you to let us know

2   kind of the status and which item we should take up first.

3        MR. WILLIAMS:  Yes, your Honor.  I think in terms of

4   the Court's request or recommendation to add the mental health

5   treatment, in speaking with my client, I don't think there is

6   any objection to that, but let me confirm.

7        Yes, your Honor, so there is no objection to adding

8   that condition.

9        THE COURT:  Very good.  So let's just deal with that,

10  I can confirm the language of the order, although maybe I

11  can't.  Has that been e-mailed to me?  If you just give me a

12  moment I can tell you what that language will be.

13       So the order reads:  On consent, as confirmed at the

14  pretrial conference in this matter on July 31, 2025,

15  Ms. Zarubina's release conditions are hereby modified by the

16  addition of the following condition:

17       Ms. Zarubina is hereby directed to undergo a mental

18  health evaluation by a provider chosen by pretrial services and

19  to engage in mental health treatment to the extent recommended

20  by that provider.  All other conditions remain in effect as

21  previously ordered.

22       Is that satisfactory to the defense?

23       MR. WILLIAMS:  Yes, your Honor.

24       THE COURT:  And to pretrial services?

25       MS. MAYER:  Yes, your Honor.

1          THE COURT:  Thank you.  So I will print out copies of

2    this so that we have it for the record and pretrial services

3    and each party can have a copy.

4          So I'm doing four copies, Mike, is that sufficient?

5    Five?  Okay.  One for good luck.  Mr. Coffin, I've e-mailed the

6    modified version back to you.  Thank you for your patience with

7    that.

8          So does Ms. Zarubina wish to make an application for

9    change of counsel?

10          MR. WILLIAMS:  Yes, your Honor.

11          THE COURT:  Are you in a position to give me a précis

12    of the reasons without reviewing confidential communications?

13          MR. WILLIAMS:  Yes, your Honor.

14          THE COURT:  Please go ahead.

15          MR. WILLIAMS:  I think at a high level, without

16    getting into details with the government here, I think there

17    has been some distrust in the attorney-client relationship.

18    One thing I can say without revealing any privileged

19    information, I know Ms. Zarubina was unhappy with my request to

20    change the date of the status conference.  I do take ownership,

21    I did not run that by her beforehand.  But I know that is one

22    thing that has played into it, amongst other things, and I do

23    think she could benefit from hearing another voice.

24          THE COURT:  Is that a kind of a fair summary,

25    Ms. Zarubina?  If there is something else you think I should

1    hear right now, I'd ask you to tell Mr. Williams to make sure

2    we don't do anything that would be contrary to your best

3    interests here just in terms of saying it in front of the

4    government.  So you can sit down, and if you want to talk to

5    him, push the microphones away and you two can talk.

6              (Pause)

7              MR. WILLIAMS:  I think it may make sense to talk

8    outside of the presence of the government.  But I think there's

9    at a high level just disagreement on strategy, and as well as

10   not feeling heard in the attorney-client relationship.

11             THE COURT:  All right.  Well, I'm trying to think of

12   the best way to do this.  Let me first say some general things

13   and then we'll see if we need to talk further.

14             I'm going to start by acknowledging, Ms. Zarubina, I

15   would not want to be in your position.  I mean, it is a

16   stressful situation, there is a lot of stake for anybody who is

17   accused of a serious crime.  You are presumed innocent.  This

18   whole process is designed to make sure that your rights are

19   protected and that you understand what's going on and why it's

20   going on, at least in the most important ways.  There are of

21   course details and details of legal issues and strategy that

22   Mr. Williams and his colleague, like the defense attorneys --

23   all the defense attorneys that the court appoints are very

24   experienced, very knowledgeable.

25             Mr. Williams is with Federal Defenders which we often

1    say, with no offense to the government, is the best law firm in

2    the city and the hardest one to get into, because the people

3    are so skilled there.  But the other lawyers that we appoint

4    who are not with Federal Defenders are screened and very

5    experienced as well, because it is a constitutional

6    responsibility of the Court to provide counsel who know what

7    they're doing and can do it at a very high level.

8            So having said that, there are matters and both

9    strategic calls and needs that counsel may make in the details

10   of going along one day to another that they find they have a

11   need to make or they think advantageous one way or another to

12   make, and to make or not make an issue of something that

13   they're not required to consult you on, and they may not.

14   Although an important aspect of an attorney-client relationship

15   also is each hearing each other and each getting to know what

16   the other person's points of sensitivity are and how best to

17   support and develop comfort with each other, and that goes both

18   ways, and that's part of the attorney's responsibility as well.

19   And if he didn't know before, Mr. Williams knows now that if

20   this relationship is going to continue, he needs to find more

21   ways to support and nurture that trust.  And if there are

22   things that may make you anxious or set you on edge, that he

23   needs to handle and manage those things in a way that, to the

24   best of his ability, won't do that or to help you understand

25   why it's going one way or another.

1    The lawyers are responsible for using their legal

2    knowledge and expertise to determine what they consider to be

3    the appropriate and best strategy to manage the case day-to-day

4    in a way that is consistent with what they consider appropriate

5    strategy, but you need to understand what's happening, why

6    things are happening, and there are decisions that are yours

7    and yours alone that you make based on advice that is given in

8    the way you need to hear it to understand it, and that is based

9    on their legal knowledge.

10    And the big issues are, are you going to go to trial,

11    are you going to admit anything, plead guilty as we call it,

12    are there motions you will discuss with your client, whether

13    there are pretrial -- not your client -- your attorney, whether

14    there are pretrial motions that can be made that can affect

15    your case to your advantage.  And you'll get serious advice

16    about that, and those will be very serious discussions.  And

17    discussions of the discovery material that is provided by the

18    government and the legal significance of that material and what

19    that means for the prospects of your case.

20    But you are not and you will never be Mr. Williams'

21    only client.  He needs to do that and manage his caseload and

22    give that good service, that good personalized service to all

23    of the clients.  And there are different phases of the case in

24    which the frequency of your contacts and the depth of your

25    contacts will be different, because cases move along at a pace

1  that make sense for the particular case, and a pace that's

2  making sense in light of the lawyers' respective caseloads and

3  the Court's calendar as well.

4         And so, sometimes -- I'm not saying this is you, but

5  sometimes there are defendants who say, but I want a call back

6  every time I call my lawyer within two hours and my lawyer's

7  not doing that and I need to talk to my lawyer every single day

8  at a time when we're not in motions or we're not preparing for

9  trial or something like that. And if the lawyer can't sort of

10 work out that conversation with the client, sometimes we're

11 here and I'm having a conversation like this and I'm trying to

12 help somebody understand that sometimes what you would ideally

13 want in terms of contact or service or pace is not what is

14 necessary or realistic in the time.

15        And sometimes what is underneath some of the anxiety

16 and friction in a relationship can be what I'll call hard

17 realities of what the law is that I'm sure you're hearing. I

18 don't know exactly what you're hearing, but I'm sure that

19 you're hearing things nobody would want to hear about choices

20 and potential outcomes and situations that you just don't want

21 to be in and don't want to be faced with.

22        And sometimes, subconsciously or consciously, we react

23 to that by saying it's to do with there being something

24 fundamentally wrong with the messenger. Now, occasionally

25 there is something fundamentally wrong with the messenger, but

1    most times it's really not, although the messenger may have to

2    change the way the message is delivered and change the context

3    in which the message is delivered, but changing the lawyer is

4    not going to change the law.

5              And so, it's really important for you to be working

6    with somebody who knows what the law is and knows how the law

7    can play out in federal court in a case as serious as this.

8              And so, what I would like to do today is to ask both

9    of you to take a restart, to set a new baseline, and talk very

10   candidly and see if you can rebuild the relationship knowing

11   what has gone on before, and what have been triggers and what's

12   not.  Think about what you, if it's that you are not

13   understanding why something is happening or you have questions

14   that you haven't been listened to on enough, or if you have

15   information that you believe Mr. Williams just isn't

16   understanding, make him sit down until he's fully heard you and

17   you've fully heard him and see if you can make this work.

18             And if by the time of our next conference, which we

19   can set for some time early in September, there continues to be

20   this problem, you'll have him write me a letter that says you

21   want to renew the application, and I'll hear you again and

22   we'll take the right next step then.  And I'll determine what

23   the right next step is because that's my job, I'm the judge.

24   But I will hear you more fully.

25             And so that would be my proposal for today.  Do you

P7V3ZARC

 1    want to talk with Mr. Williams and then let me know what?

 2           THE DEFENDANT:  So you mean talk right now about what

 3    you said and your decision?

 4           THE COURT:  Yes.

 5           THE DEFENDANT:  Well --

 6           THE COURT:  Again, I'm a little bit concerned about

 7    you saying anything on the record that might be prejudicial to

 8    you.  So if you two want to push the microphones away or walk

 9    together in the aisle, so you can talk quietly with each other.

10           THE DEFENDANT:  So I just want to say that my decision

11    was not made by emotions.  It was like my decision I made

12    without emotional meaning so by very certain purposes.  So and

13    I'm not sure the situation will be changed in September.  But I

14    am afraid it will be late because I have next court in

15    September 19.  We don't have enough time if we change the

16    attorney in the future, so to discover the whole story to the

17    new attorney and the situation will be the same actually.

18    That's what I feel.

19           THE COURT:  I am going to ask the attorney for the

20    government, the pretrial services officer, and the spectators

21    to leave the courtroom now and go out into the hall so that we

22    can talk more freely.  And this portion of the transcript will

23    be sealed.  And then Mr. Coffin will call you when we're done

24    talking.

25           MR. ROSS:  Thank you, your Honor.

P7V3ZARC

1          (Pages 11-21 Sealed)

2          (In open court)

3          THE COURT:  Good afternoon.  And so, the assistant

4    United States attorney and the pretrial services officer have

5    returned to the courtroom, and another member of my chambers

6    staff has also returned to the courtroom and we are back on the

7    public record.

8          I have denied the motion for change of counsel.  And I

9    have also reminded Ms. Zarubina of her legal obligations in

10   terms of the conditions of pretrial supervision, which include

11   not under any circumstances, directly or indirectly, contacting

12   the FBI agents or reaching out through social media or posting

13   things that are expected to reach or influence agents or

14   witnesses in this case, in light of the federal laws against

15   witness harassment and intimidation and obstruction of

16   proceedings in these criminal cases that could be the basis of

17   potential additional charges and penalties, and nobody should

18   want to be risking that.

19         So, that is a very important thing, and it was the

20   reason why I entered that additional condition making that very

21   clear for Ms. Zarubina's protection, so that she didn't

22   inadvertently do anything that could make her situation worse,

23   and for the protection of this case, because it's my

24   responsibility as a judge to make sure that this case can

25   proceed in a way that is fair, that is just, where everyone is

1   heard properly and the evidence is not tainted in any way.  So,

2   those are really important points.

3           Do you have any questions about that, Ms. Zarubina?

4           THE DEFENDANT:  No.

5           THE COURT:  And so, we have a next conference date

6   that is September 19 at noon.  And I have already excluded

7   speedy trial time until September 19.

8           If for any reason that September 19 date needs to

9   change, counsel, talk to each other.  Mr. Williams, make sure

10  you talk to Ms. Zarubina, and then reach out to my chambers and

11  we will work something else out.

12          And Ms. Mayer is here and has been very patient

13  waiting outside and listening to the proceedings.  From the

14  supervision perspective, Officer Mayer, is there anything else

15  that you would like to say or would like us to address today?

16          MS. MAYER:  No, your Honor.  Thank you.

17          THE COURT:  All right.  Ms. Zarubina.

18          THE DEFENDANT:  Yeah, so I just wanted to add one

19  thing.  So, if it's possible to ask, for example, the agent to

20  block my number.  I don't know from your experience if it

21  happened before.  But I think it's very easy way to resolve

22  this problem, because the problem is I don't have his number

23  saved in my phone because I remember numbers of his phone.

24          THE COURT:  The short answer is while that may be

25  possible, that's not appropriate because it's not appropriate

1    for you to be calling him in the first place.  You just trying

2    to contact the agent, even if the number is blocked, is

3    something that could get you into legal trouble.  So you need

4    to find a way to not ever have your phone ring this guy's

5    number.  Period.  And that's very, very serious.

6              Do you understand that?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  All right.  Is there anything else we need

9    to discuss?  Stay safe and be well, everybody.

10             (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25