# Federal Defenders

## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

---

May 28, 2026

**BY ECF**

The Honorable Laura T. Swain
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:     **United States v. Nomma Zarubina**
        **25-CR-179 (LTS)**

Dear Judge Swain:

When Nomma Zarubina immigrated to the United States from Russia over ten years ago, she came here with a noble set goals.  She wanted to obtain lawful status in this Country -- check. She wanted to further her education -- check.  And she wanted to use her background, knowledge, and skillset to break into the field of National Security.  When the FBI came knocking in 2020, seeking her help with gathering information about a particular Russian National, she saw this as her opportunity to achieve that final goal.  Little did she know that the FBI was just going to milk her for information until they no longer needed her assistance.

After the FBI initially contacted Ms. Zarubina in October 2020, Ms. Zarubina met with agents approximately eight more times.  Five of those meetings, she initiated herself.  And in the majority of these meetings, Ms. Zarubina appeared without legal counsel by her side.  To be clear, Ms. Zarubina had no motive to mislead or deceive the FBI; to the contrary, she initiated these meetings because she wanted to be helpful. █████████████████████████████████ ████████████████████████████████████████████████████  Despite all of the truthful information that Ms. Zarubina shared with the FBI over the course of three years, the government chose to focus on two false statements that she made in 2021 and 2023 regarding her relationship with a Russian Federal Security Service ("FSB") officer -- statements that she later corrected in subsequent meetings with the FBI.  While it is true that making a false statement to a federal officer is a crime, it is also true that defendants routinely lie to law enforcement without such charges ever being brought.  This Court should therefore see this prosecution for what it is -- an effort to obtain sensitive information from Ms. Zarubina and then have her removed from this Country.

1

Ms. Zarubina stands before the Court facing her first ever criminal conviction. Notwithstanding her lack of criminal history, at the conclusion of these proceedings, she will almost certainly be removed to Russia, where she will be separated from her young daughter who is a United States citizen. This is a devastating prospect, in and of itself, and the Court need not add to this with a lengthy term of imprisonment. Indeed, the seven-plus months that she has already spent in federal custody is punishment enough. Accordingly, for the reasons that follow, Ms. Zarubina respectfully asks the Court to impose a sentence of time served.

## I. Background

Ms. Zarubina was born in Tomsk, Russia in 1990. She is the oldest of three children born to her parents, Alexander and Irena. Her father works for a furniture company, and her mother is employed at a local university. Her younger brother, Milan, is an artist, and her younger sister, Vasilissa, is a law school student. Ms. Zarubina's entire family remains in Russia to this day.

As one would expect with a mother who works as a college professor, education was a strong point of emphasis in the Zarubina household. Hence, even from a young age, Ms. Zarubina had a thirst for knowledge:

> From the beginning, Nomma was a bright spark. As a child, she was full of energy, curiosity, and a sharp wit. She didn't just go to school – she lived for learning, especially in the social sciences. Her thirst for knowledge was truly inspiring.

*See* Exhibit 1 (Irena Rymanova Letter of Support). All throughout school, Ms. Zarubina excelled. She obtained exemplary grades in primary and secondary school, leading to her acceptance into one of the best academic lyceums in her region, which was reserved for only the most gifted students. She then went on to graduate from Saint Petersburg State University with a degree in Religion, and later, earned a master's degree in National Security and Public Administration from the Russian Presidential Academy of National Economy and Public Administration in Moscow, Russia. Ms. Zarubina's trajectory, by all accounts, was astounding.

Not only was Ms. Zarubina a brilliant academic student, but she was also a well-rounded individual. For instance, in her spare time, she attended a music school in Russia, where she learned to play the piano and compose music, and she trained in classical ballet. More importantly, Ms. Zarubina treated people well, set a great example for her younger siblings, and left a lasting impression wherever she frequented:

> Nomma always studied very hard and constantly sought knowledge. She was accepted into one of the best academic lyceums in the city, where only highly capable and well-prepared students were admitted. Even years later, teachers remembered her with warmth and respect. That always meant a great deal to me.
>
> But most importantly, she was never someone who cared only about herself or her achievements. On the contrary, she always tried to share what she knew, inspire others, and help the people close to her become better versions of themselves. In many ways, it was because of her that I myself began to believe I could achieve something meaningful in

life.

I later attended the same lyceum as Nomma, and I clearly remember how teachers spoke about her. They still remembered her years later. As her younger sister, this was incredibly touching to me because I understood how strongly she impacted the people around her.

*See* Exhibit 1 (Vasilissa Zarubina Letter of Support).

In 2015, Ms. Zarubina had her sights set on more. To that end, at age 25, she packed up everything that she possessed and moved to the United States on a student visa. In coming to the states, she had a goal of building upon the education that she had received back home, and she hoped to one day work in the field of National Security. Of course, this would first require her to obtain lawful status in this Country. And in 2019, she did just that -- she became a lawful permanent resident.

Along the way, Ms. Zarubina had several notable life achievements. In April 2016, she married Levon Meliksetov, who she had met shortly after arriving in the United States. Then, in 2019, she gave birth to her daughter, ███. The love that Ms. Zarubina has for her daughter is undeniable. Indeed, raising her daughter is one of the biggest joys of her life: "Every time I had the pleasure of seeing [Nomma], she always had new photos of her daughter, and a new story speaking as to why she was always so proud of her daughter. It is my belief, through her actions and words, that her daughter is the most important thing in her life[.]" *See* Exhibit 1 (Mike Thompson Letter of Support).

Life in the United States, though, was not all rosy. Although Ms. Zarubina excelled academically, finding steady work in the states was not as easy as she hoped. Consequently, she held various jobs that included working at bagel store, as a receptionist at a skin care office, as an assistant caterer, and as a delivery and Uber driver. While these jobs helped pay the bills, she was by no means living comfortably. When she and her husband divorced in January 2021, she found herself in an even greater financial bind as a single mother raising a young daughter. During this period, Ms. Zarubina made some employment choices that she is not proud of, and that she wishes she could go back in change. Needless to say, this is a period of her life that she would like to leave in her past for good.

Despite the struggles, Ms. Zarubina has always found her way back to education as a means of pushing forward. In 2022, she earned her master's degree in Higher Education Administration from Baruch College here in New York, and in 2023, she began taking classes at the Harvard Extension School; namely on the topic of Intelligence and International Security. Even while in custody on this case, Ms. Zarubina has continued to find ways to consume knowledge and advance her education. She remains undeterred in her pursuit of one day obtaining her Ph.D.


## Overview

| TOTAL LEARNING HOURS | COMPLETED COURSE HOURS | SUPPLEMENTAL LEARNING HOURS | COMPLETED COURSES |
|---|---|---|---|
| 83 | 68 | 15 | 6 |

## 6 Courses completed

| Course name | Overview | Time | Status |
|---|---|---|---|
| Introduction to Western Political Thought | Examination of the major texts and figures in the history of political thought, including Plato, Machiavelli, and Rousseau. Topics of analysis include: power, justice, rights, law, and other issues pertaining to governance.... | **Time to pass:** 45 hr 43 min **Total time:** 45 hr 43 min | **PASSED** Completed: Apr 23, 2026 |
| Social Studies - U.S. History | In this course you will practice the skills necessary for the U.S. History segment of the GED test. You will read summaries and primary source documents and answer questions. The material in this course comes from DCS... | **Time to pass:** 6 hr 41 min **Total time:** 6 hr 42 min | **PASSED** Completed: Apr 16, 2026 |
| Critical Thinking | One second. That is all it takes to make a move you can't take back. One second of anger. One second of disrespect. One second where you react without thinking. In chess, one bad move costs you the game. I... | **Time to pass:** 6 hr 18 min **Total time:** 6 hr 18 min | **PASSED** Completed: Apr 26, 2026 |
| Amy Tan Teaches Fiction, Memory & Imagination | Amy Tan was 33 before she first explored her voice as a fiction author. A few years later, her debut novel, The Joy Luck Club, spent 40 weeks on The New York Times bestseller list. Now she's showing you her approach to... | **Time to pass:** 5 hr 21 min **Total time:** 5 hr 21 min | **PASSED** Completed: Dec 14, 2025 |
| Social Studies - Civics and Government | This course covers topics to help you prepare for the Social Studies section of the GED, with a focus on civics and government. Specifically, you will learn about how government works, different systems of government,... | **Time to pass:** 2 hr 59 min **Total time:** 2 hr 59 min | **PASSED** Completed: Apr 17, 2026 |
| Social Studies - Geography | In this course you will learn important geography concepts that will help you succeed on the Social Studies portion of the GED exam. You will learn subjects such as migration and trends, sense of place, map tool... | **Time to pass:** 1 hr 21 min **Total time:** 1 hr 21 min | **PASSED** Completed: Dec 14, 2025 |

*See also* Exhibit 2 (Transcripts and Certificates of Completion).

As reflected throughout her life, and in the many letters of support submitted on her behalf, there is much more to Ms. Zarubina than what is stated in the indictment. She is not a liar, an enabler of criminal activity, or a threat to the public. Rather, she is a beloved daughter, a role model for her siblings, and a safe haven for her daughter. While her conduct in this case may have jeopardized her ability to remain in the United States, Ms. Zarubina never had any intentions of causing harm to this Country. To the contrary this is the place that she has called home for the past ten years, and this is the Country of which her daughter is a citizen. Ms. Zarubina is sorry for

her actions in this case, and she asks the Court to recognize that these charges do not reflect her true character.

## II.     The Offense Conduct in this Case does not Warrant Additional Prison Time

While every federal crime must be treated with seriousness, the offense conduct in this case is rather benign when compared to the range of offenses that regularly come before the Court. Indeed, Ms. Zarubina's crimes of conviction are victimless, non-violent offenses. In effect, she made two false statements -- one to the FBI and another to the Department of Homeland Security on her Application for Naturalization. Neither of these offenses warrant more than the seven months that Ms. Zarubina has already served in prison.

### a.   April 2021 False Statement to FBI

In 2020, the FBI began investigating a Russian National named Elena Branson for violations of the Foreign Agents Registration Act. As part of that investigation, the FBI spoke with Ms. Zarubina about Ms. Branson in October 2020, given Ms. Zarubina's relationship with her. This was the first of many meetings between the FBI and Ms. Zarubina over the course of the next three years.

Between 2021 and 2024, Ms. Zarubina voluntarily met with the FBI on approximately eight different occasions. Of these eight meetings, Ms. Zarubina herself initiated five of them, the majority of which she participated without the assistance of counsel. These meetings took place in various settings throughout New York City. Ms. Zarubina's sole intent with these meetings was to be helpful. To emphasize this point once more, she initiated many of these meetings on her own accord.



**(Text Thread between Ms. Zarubina and FBI Agent in 2022)**

By November 2024, the FBI had gotten everything out of Ms. Zarubina that they needed, and much more. But instead of thanking her for all of the truthful information that she provided over the course of three years, they focused on two false statements that she made (one on April 20, 2021) about her lack of relationship with a Russian FSB officer. Notwithstanding the fact that Ms. Zarubina later acknowledged her relationship with this FSB officer in subsequent meetings with the FBI, the government still decided to charge her with making two false statements to the FBI in prior meetings.

After reflecting on this case, Ms. Zarubina recognizes that providing an untruthful statement to the FBI agents was wrong. Still, she maintains that her intent was never to deceive them. Her decision to withhold this information was rooted in the fact that she did not know if she could fully trust the agents she was meeting with. And with the benefit of counsel, perhaps she would have made a more informed decision to simply decline answering those questions. In any event, Ms. Zarubina is sorry for her actions, and she now knows better.

b. <u>July 2022 False Statement on Naturalization Application</u>

After becoming a legal permanent resident of the United States in 2019, Ms. Zarubina applied for citizenship in July 2022. Her naturalization application consisted of twenty-three pages, all of which she completed without the assistance of immigration counsel. Question 30(B) on the application asked whether she had ever "[b]een a prostitute, or procured anyone for prostitution." Although Ms. Zarubina had been involved in unlawful sexual activity as a way to support herself financially, she answered "No" to the question.

This is a very sensitive area of Ms. Zarubina's life that she does not like to discuss. But suffice it to say that providing financially as a single mother in a foreign country presented challenges for her. Her decision to answer "No" to this question was not borne out of ill intent. Rather, it was informed both by her knowledge of other people answering this question similarly without consequence, and by her concern that answering "Yes" would automatically disqualify her from citizenship without an opportunity to explain her circumstances. Again, Ms. Zarubina is sorry for her actions, and she accepts that her false answer to this question was not justified.

## III. The Court has the Discretion to Impose a Below Guidelines Sentence

"A sentencing judge has very wide latitude to decide the proper degree of punishment of an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008). In exercising its discretion, courts must be "mindful of the fact that the Sentencing Guidelines are just that, guidelines, and that they are truly advisory." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013) (internal quotations and citation omitted). Moreover, the Second Circuit has "declined to adopt a presumption of reasonableness for sentences that fall within the guidelines range." *Id.* (citation omitted). Instead, the Second Circuit has championed "a more flexible approach that allows considerations of the facts of an individual case." *Id.* Ultimately, courts are to use as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a), which directs sentencing courts to impose a sentence sufficient, but not greater than necessary to comply with the factors set out in 18 U.S.C. § 3553(a)(2)" – proportionality, deterrence, incapacitation, and rehabilitation. *Id.* (internal quotations and citation omitted). Stated differently, the Court must "consider every convicted person as an individual" and its sentence must "fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011).

## IV. The § 3553(a) Factors Support a Sentence of Time Served

The guidelines do not accurately reflect the appropriate sentence in this case, particularly in light of Ms. Zarubina not receiving acceptance of responsibility points despite having entered a guilty plea several months before her scheduled trial date and having saved both the government and the Court extensive resources. Had she been awarded acceptance of responsibility points, her seven-plus months in custody would have already been nearing the low end of the applicable guidelines range.

Setting this point aside, the § 3553(a) factors more than justify a sentence of time served. Beginning with the nature and circumstances of the offense, there can be no dispute that this was a victimless, non-violent offense. Indeed, Ms. Zarubina pled guilty to making two arguably

inconsequential false statements.  While Ms. Zarubina is remorseful for her actions, at bottom, no one but herself has been harmed by these false statements.  An additional term of incarceration is thus unnecessary to further punish Ms. Zarubina.

Turning next to the history and characteristics of Ms. Zarubina, it is important to remember that this is her first ever criminal conviction.  Hence, she is not someone who has posed a danger to the public in the past, or someone who the Court needs to protect the public from now.

Although Ms. Zarubina did violate the terms of her pretrial release by repeatedly contacting one of the FBI agents involved in this case, this was not a civilian witness, and thus, not someone who is representative of the public at large.  Moreover, context is key to fully understanding this situation.  The FBI agent at issue was someone who Ms. Zarubina had developed a relationship with over the course of three years, and who she confided in about sensitive matters.  When she was suddenly charged with the crime of false statements after providing valuable intel to this individual, she felt a sense of hurt and betrayal.  In hindsight, she handled her emotions poorly, but this was never about placing the FBI agent in physical danger.  To the contrary, Ms. Zarubina was upset, and she did not know how to properly express it.

At her core, Ms. Zarubina is a loving mother who has a zest and curiosity for life.  Family and friends describe her as a brilliant woman who has always excelled academically and who came to the United States with healthy ambition.  *See* Exhibit 1 (Letters of Support).  Along the way, Ms. Zarubina has had to overcome the struggles of being a single parent and trying to provide for her daughter in a place where English is not her first language.  This led to some compromised employment decisions.  While she is not proud of her actions, she is proud to say that she is still standing and that she did not let the circumstances of this case break her.  Ms. Zarubina has much to offer the world, and she looks forward to the day when she can put this case behind her and get back to focusing on her education and her dream of obtaining a PhD.  This Court should not hold her back from this pursuit any longer, and should instead impose a sentence of time served.

In terms of the need to promote specific deterrence, the fact that this is Ms. Zarubina's first time in prison cuts against the need to impose a lengthy sentence.  Indeed, there is no evidence that Ms. Zarubina has failed to learn her lesson from this current stint in prison, such that an additional period of custody would be justified to deter her from future misconduct.

Similarly, an additional period of custody is not necessary to promote general deterrence. As a threshold matter, general deterrence is "a phenomenon that is notoriously difficult (and perhaps) impossible to measure." *See United States v. Brady*, 2004 WL 86414, at *9 (E.D.N.Y. Jan. 20, 2004).  The very idea of general deterrence is premised on the erroneous idea that would-be offenders can anticipate what punishment they might receive.  But as we know, "[since] consequences for the same federal offense vary widely from one judge to the next, deterrence is undermined because a defendant who comes up for sentencing has no way of knowing or reliably predicting whether he will walk out of the courtroom on probation, or be locked up for a term of years that may consume the rest of his life, or something in between." *See United States v. Cavera*, 550 F.3d 180, 223 (2d Cir. 2008) (Sotomayor, J., concurring in part) (internal quotations and citation omitted).  It is for this very reason that individuals who come before the Court are warned that no one can reliably predict what their sentence will ultimately be.

Moreover, sentencing Ms. Zarubina to a lengthy period of incarceration is unlikely to deter the crimes at issue in this case. Individuals have always withheld the full truth from law enforcement, and they always will withhold the full truth for a myriad of reasons, some of which include a desire to protect others, to avoid self-incrimination, or even just based on a natural distrust of law enforcement. No sentence that the Court gives to Ms. Zarubina will ever change that fact. This is also unlikely to change because the government does not consistently enforce the false statements statute. To that point, undersigned counsel has sat through countless proffer sessions with the government where a client is confronted with a false statement that they have made or a material omission, and this almost never results in charges being brought under 18 U.S.C. § 1001. Hence, Ms. Zarubina should not be singled out as an example under the guise of general deterrence.

Finally, a time-served sentence is warranted given the potential collateral consequences that Ms. Zarubina faces as a result of her conviction. Because she is not a U.S. Citizen, her crimes of conviction will likely trigger removal proceedings. And because she does not currently have a prior order of removal that can simply be reinstated, these removal proceedings, and her continued detention in immigration custody, could go on for months. This does not even account for the fact that she will be separated from her seven-year-old daughter. Ms. Zarubina thus faces far greater consequences than the seven-plus months that she has served in custody. For all of these reasons, the Court should impose a sentence of time served.

## V. Conclusion

For all of the reasons stated herein, this Court should impose a sentence of time served followed by three years of supervised release.

Respectfully Submitted,
/s/
Kristoff I. Williams
Assistant Federal Defender
Federal Defenders of New York
(212) 417-8791